## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

VITALI YAUHFRAU,

Plaintiff,

v.                                                          Case No.:

RRG LOGISTICS LLC,
a Florida Limited Liability Company;
ROKAS GRIKSTAS, individually;
and RENARDAS GRIKSTAS, individually,

Defendants.

_____/

## COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, FLORIDA WAGE STATUTES, AND RELATED STATE LAW CLAIMS

Plaintiff, VITALI YAUHFRAU, by and through undersigned counsel, files this Complaint against Defendants RRG LOGISTICS LLC, ROKAS GRIKSTAS and RENARDAS GRIKSTAS (collectively, "Defendants"), and alleges as follows:

### NATURE OF ACTION

1. This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, attorney's fees, and costs from Defendants for their willful violations of the FLSA.

2. This action also asserts claims under Florida law for unpaid wages pursuant to Fla. Stat. § 448.08, retaliation under the Florida Private Whistleblower Act, Fla. Stat. § 448.102, breach of contract, and defamation.

3. Plaintiff seeks damages, liquidated damages, injunctive relief, attorney's fees, and costs.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 216(b), which provides a private right of action to enforce the FLSA.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

6. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendants reside and conduct business in this District.

**PARTIES**

7. Plaintiff Vitali Yauhfrau is an individual who resides in Florida and was employed by Defendants as a truck driver from approximately early 2025 through July 2025.

8. Defendant RRG Logistics LLC is a Florida limited liability company with its principal place of business located at 8005 Copenhagen Way, Boca Raton, Florida 33434. RRG Logistics LLC holds Motor Carrier number 1629597 and DOT number 4217500 and is engaged in interstate trucking and transportation of goods.

9. Defendant Rokas Grikstas is an individual who, upon information and belief, is a resident of Florida and is a principal owner and operator of RRG Logistics LLC. At all relevant times, Rokas Grikstas exercised operational control over Plaintiff's employment, including determining rates of pay, work assignments, and employment policies, and made decisions regarding payment of wages and treatment of employees.

10. Defendant Renardas Grikstas is an individual who, upon information and belief, is a resident of Florida and is a principal owner and operator of RRG Logistics LLC. At all relevant times, Renardas Grikstas exercised operational control over Plaintiff's employment, including determining rates of pay, work assignments, and employment policies, and made decisions regarding payment of wages and treatment of employees.

11. Defendants Rokas Grikstas and Randy Grikstas are brothers who jointly own and operate RRG Logistics LLC and are properly considered employers under the FLSA pursuant to 29 U.S.C. § 203(d) because they had the power to hire and fire employees, supervised and controlled employee work schedules and conditions of employment, determined the rate and method of payment, and maintained employment records.

12. At all times relevant to this Complaint, Defendant RRG Logistics LLC has been and continues to be an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(r) and (s).

13. Defendant RRG Logistics LLC is engaged in the business of interstate trucking and transportation of goods across state lines. The company's annual gross volume of sales made or business done exceeds $500,000.

14. At all times relevant to this Complaint, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, as Plaintiff regularly drove trucks transporting goods in interstate commerce across state lines.

15. At all times relevant to this Complaint, Defendants were employers of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and Plaintiff was an employee of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

**FACTUAL ALLEGATIONS**

16. Plaintiff Vitali Yauhfrau was employed by Defendants as a long-haul truck driver from October 2024 through June 2025. As part of his employment, Plaintiff regularly drove interstate routes transporting goods for Defendants' trucking business through multiple states including Florida and Oregon. Plaintiff's job duties included operating commercial motor vehicles, conducting vehicle inspections, loading and unloading cargo, performing vehicle maintenance and repairs, completing required logbooks and documentation, and complying with Department of Transportation regulations.

17. At the commencement of Plaintiff's employment, Defendants agreed to compensate Plaintiff at a rate of $0.65 per mile driven and required Plaintiff to pay a deposit of $2,000, which would be returned upon completion of his employment.

18. Despite the agreed-upon rate of $0.65 per mile, Defendants actually paid Plaintiff only $0.60 per mile throughout his employment, resulting in an underpayment of $0.05 per mile. Between April 29, 2025 and May 22, 2025 alone, Plaintiff drove 11,958.81 documented miles.

19. In addition to paying below the agreed rate, Defendants systematically underreported Plaintiff's actual mileage by approximately 300 to 400 miles per week, thereby depriving Plaintiff of compensation for substantial distances actually driven.

20. In or around April 2025, Defendants sold the truck Plaintiff had been assigned to drive and required him to remain at home without pay for multiple weeks while awaiting a new truck assignment, during which time Plaintiff remained available to work and ready to resume driving upon Defendants' instruction.

21. At the end of April 2025, Defendants directed Plaintiff to travel from Florida to Portland, Oregon to retrieve a truck that Defendants had acquired, requiring approximately 9 hours

of travel time with a layover in Denver. Defendants required Plaintiff to pay for the airfare out of his own funds and refused to reimburse this expense, despite this travel being solely for Defendants' business purposes.

22. After retrieving the truck from Oregon, Plaintiff discovered the vehicle had Vehicle Identification Number (VIN) issues requiring resolution before proper registration. Defendants directed Plaintiff to make two separate unpaid round-trip journeys of approximately 60 miles each from Dania Beach to West Palm Beach for DMV VIN verification, despite these trips being necessitated by Defendants' acquisition of the vehicle and being entirely Defendants' responsibility as owners.

23. Following the DMV trips, Plaintiff was forced to wait at home without pay for approximately two months while Defendants purportedly resolved the VIN issue. Plaintiff later learned the truck was seized by law enforcement on suspicion of being stolen property.

24. During all periods of forced downtime, Plaintiff remained ready, willing, and able to work. Defendants exercised control over Plaintiff during these periods by requiring him to remain available and wait for their instructions, yet failed to compensate him for this time.

25. Throughout Plaintiff's employment, Defendants required Plaintiff to perform repairs and maintenance on trucks and trailers while on the road, despite owning the vehicles and being responsible for all maintenance. When mechanical issues arose, Defendants refused to authorize professional roadside service and instead directed Plaintiff to repair the vehicles himself using whatever tools and resources he could access. Plaintiff was

compelled to spend substantial time performing these repairs without compensation beyond the per-mile rate earned only while actively driving.

26. Throughout Plaintiff's employment, Defendants failed to maintain accurate records of Plaintiff's hours worked, including hours spent on vehicle inspections, loading and unloading, waiting time, repairs and maintenance, and other non-driving duties. Defendants' compensation system paid Plaintiff solely on a per-mile basis without tracking or compensating other work time, resulting in failure to maintain records required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

27. When Plaintiff's total compensation is divided by the total number of hours Plaintiff actually worked each week, including driving time, non-driving work time, waiting time, and time spent on repairs and other job duties, Plaintiff's effective hourly rate fell below both the federal minimum wage of $7.25 per hour as required by 29 U.S.C. § 206(a)(1) and the Florida minimum wage of $12.00 per hour pursuant to Fla. Stat. § 448.110. Defendants' practice of paying on a per-mile basis while simultaneously requiring substantial unpaid work resulted in systematic underpayment below minimum wage requirements.

28. Defendants' failure to maintain records of Plaintiff's actual hours worked was willful and designed to obscure the true extent of Plaintiff's work and to avoid their legal obligations to pay minimum wage for all hours worked.

29. Plaintiff regularly worked in excess of 40 hours per week during his employment with Defendants. Although Plaintiff primarily drove commercial motor vehicles in interstate commerce, which would ordinarily qualify for the Motor Carrier Exemption under 29 U.S.C. § 213(b)(1), Plaintiff is entitled to overtime compensation pursuant to the small

vehicle exception created by the SAFETEA-LU Technical Corrections Act of 2008, which provides that the motor carrier exemption does not apply to employees who operate vehicles weighing 10,000 pounds or less in interstate commerce.

30. Upon information and belief, during various workweeks throughout Plaintiff's employment, Plaintiff operated or was assigned to operate vehicles weighing less than 10,000 pounds in interstate commerce, thereby qualifying as a covered employee entitled to overtime compensation under 29 U.S.C. § 207. Pursuant to controlling case law in multiple circuits, including *McMaster v. Eastern Armored Services, Inc.*, 780 F.3d 167 (3d Cir. 2015), employees who spend any portion of their duties operating vehicles under 10,000 pounds are entitled to overtime compensation, even if they also operate heavier vehicles during other portions of their work.

31. Defendants failed to pay Plaintiff overtime compensation at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 per week during workweeks in which Plaintiff operated vehicles under 10,000 pounds, in violation of 29 U.S.C. § 207.

32. At the conclusion of Plaintiff's employment in or around July 2025, Plaintiff requested the return of his $2,000 deposit. Defendants returned only $1,500 and have refused to return the remaining $500, despite having no legitimate basis to withhold these funds. The withholding of the $500 deposit constitutes an unlawful deduction from wages owed and a breach of the parties' agreement.

33. In or around July 2025, Plaintiff contacted Defendants to request payment of his remaining $500 deposit and back wages owed for underpayment per mile, underreported mileage, unpaid downtime, and unreimbursed expenses. In response, Defendants Rokas

and Randy subjected Plaintiff to profanity, verbal abuse, threats, and intimidation, including threatening statements concerning Plaintiff's family, causing Plaintiff severe emotional distress and fear for the safety of himself and his family members.

34. Defendants falsely accused Plaintiff of being involved in damage to a parked company truck, baselessly implying that Plaintiff had engaged in criminal conduct and was responsible for property damage that Plaintiff did not cause. These threats, intimidation, and false accusations were made in direct retaliation for Plaintiff's complaints about unpaid wages and his assertion of rights under the FLSA and Florida wage laws, and were designed to intimidate Plaintiff, discourage him from pursuing his legal rights, and to punish him for requesting payment of wages lawfully owed.

35. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for whether their conduct violated the FLSA, as demonstrated by their systematic underpayment of the agreed rate, underreporting of mileage, failure to compensate for non-driving work time, failure to maintain required records, failure to pay minimum wage and overtime, and retaliatory conduct when Plaintiff complained about unpaid wages. Defendants acted with knowledge that their pay practices likely violated the FLSA, or with reckless disregard as to whether such practices complied with the statute.

## COUNT I

## VIOLATION OF FLSA MINIMUM WAGE PROVISIONS (29 U.S.C. § 206)

36. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

37. At all times relevant to this Complaint, Defendants were employers within the meaning of 29 U.S.C. § 203(d), Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e), and Defendants were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(r) and (s).

38. The FLSA requires employers to pay employees at least the federal minimum wage for all hours worked. 29 U.S.C. § 206(a)(1). This requirement applies regardless of the method by which the employee is compensated, including piece rate, commission, or per-mile compensation systems.

39. When employees are paid on a piece rate or per-mile basis, employers must ensure that when the total weekly compensation is divided by the total hours actually worked, the resulting effective hourly rate meets or exceeds the applicable minimum wage. If the effective hourly rate falls below the minimum wage, the employer violates 29 U.S.C. § 206 and must pay the shortfall to bring the employee up to minimum wage for all hours worked.

40. Section 211(c) of the FLSA mandates that employers make, keep, and preserve accurate records of employees' wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). Under 29 U.S.C. § 211(c), employers have the burden of keeping proper records of wages, hours, and other conditions and practices of employment. *Goldberg v. Anderson-Brown Patrol, Inc*., 199 F. Supp. 722 (W.D.N.C. 1961). Employers are charged with knowledge of what the Fair Labor Standards Act and regulations demand with respect to wage and time records. *McComb v. Hardy*, 8 F.R.D. 28 (D. Va. 1948). Recordkeeping requirements of FLSA are fundamental to FLSA's effectiveness,

since failure to keep accurate records can obscure multitude of minimum wage and overtime violations. *Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037 (S.D.N.Y. 1993).

41. • The regulations concerning recordkeeping contemplate that an employer's books shall plainly and objectively show the hours worked even though employees are paid on a piecework basis. *Walling v. Panther Creek Mines, Inc.*, 148 F.2d 604 (7th Cir. 1945). The payment of employees on a per-mile or trip basis, without maintaining accurate daily and weekly records of hours actually worked, does not satisfy the requirements of 29 U.S.C. § 211(c). *Wirtz v. Williams*, 369 F.2d 783 (5th Cir. 1966).

42. Defendants systematically violated the FLSA's minimum wage requirements by failing to pay Plaintiff the federal minimum wage for all hours worked. Defendants' violations include the following practices: paying Plaintiff only $0.60 per mile instead of the contractually agreed rate of $0.65 per mile, thereby reducing Plaintiff's overall weekly compensation; systematically underreporting Plaintiff's actual mileage by approximately 300 to 400 miles per week, thereby depriving Plaintiff of compensation for substantial distances actually driven; failing to compensate Plaintiff for substantial non-driving work hours including vehicle inspections, loading and unloading cargo, repairs and maintenance, waiting time for load assignments, and required travel for company business; and failing to compensate Plaintiff for multiple weeks and months of forced downtime during which Plaintiff was required to remain available for work and await Defendants' instructions.

43. Throughout Plaintiff's employment, Defendants failed to maintain accurate records of Plaintiff's actual hours worked. Defendants' compensation system paid Plaintiff solely on a per-mile basis and tracked only miles driven, without recording or tracking the

substantial additional hours Plaintiff spent on non-driving work activities required by his employment. This recordkeeping failure violated 29 U.S.C. § 211(c) and was willful and designed to obscure the true extent of Plaintiff's work hours and to avoid their legal obligations under the FLSA. By compensating Plaintiff exclusively on a per-mile basis while requiring substantial unpaid work that generated no mileage compensation, and by failing to track or record the hours Plaintiff spent on these activities, Defendants created a payment system that systematically resulted in Plaintiff receiving less than the federal minimum wage for many workweeks.

44. When Plaintiff's total weekly compensation is divided by his total hours actually worked each week, including driving time, vehicle inspection time, loading and unloading time, repair and maintenance time, waiting time, travel time, and forced downtime during which he remained under Defendants' control, Plaintiff's effective hourly wage fell below the federal minimum wage of $7.25 per hour in numerous workweeks throughout his employment.

45. Because Defendants failed to maintain accurate records of Plaintiff's hours worked as required by law, Plaintiff is entitled to present evidence that is available and reasonable under the circumstances to support his claim. Where records kept by employer are inaccurate, FLSA plaintiff meets his burden if he shows work was performed for which employees were improperly compensated and if sufficient evidence is produced to establish amount and extent of that work as matter of just and reasonable inference; burden then shifts to employer to come forward with evidence of precise amount of work performed or with evidence to negative reasonableness of inference to be drawn from plaintiff's evidence. *Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037 (S.D.N.Y. 1993). When

employer fails to keep adequate employment records, employee makes prima facie case under FLSA if he produces sufficient evidence to show amount and extent of his work as matter of just and reasonable inference; once employee makes prima facie case, burden then shifts to employer to come forward with evidence of precise amount of work performed or with evidence to negative reasonableness of inference to be drawn from employee's evidence. *Oliver v. Layrisson, 3 Wage & Hour Cas.* 2d (BNA) 316, 1996 U.S. Dist. LEXIS 1985 (E.D. La. Feb. 17, 1996).

46. Defendants' violations of the FLSA minimum wage provisions were willful within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for whether their compensation practices violated the FLSA's minimum wage requirements. The systematic nature of Defendants' underpayment, combined with their complete failure to maintain records of hours worked, demonstrates willful disregard for FLSA requirements. As a result of Defendants' violations of 29 U.S.C. § 206, Plaintiff has suffered and continues to suffer damages in the form of unpaid minimum wages for all workweeks in which his effective hourly rate fell below the federal minimum wage.

47. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover the full amount of unpaid minimum wages owed. Additionally, because Defendants' violations were willful, Plaintiff is entitled to liquidated damages in an amount equal to the unpaid minimum wages pursuant to 29 U.S.C. § 216(b). Plaintiff is further entitled to recover reasonable attorney's fees and costs incurred in prosecuting this action.

## COUNT II

## VIOLATION OF FLSA OVERTIME PROVISIONS (29 U.S.C. § 207)

48. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 76 as if fully set forth herein.

49. The FLSA requires employers to compensate employees at a rate of one and one-half times the regular rate of pay for all hours worked in excess of 40 hours per workweek. 29 U.S.C. § 207(a)(1).

50. Section 213(b)(1) of the FLSA exempts from overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502(b) of title 49." 29 U.S.C. § 213(b)(1). This exemption is commonly referred to as the Motor Carrier Exemption. The Motor Carrier Exemption applies to drivers, driver's helpers, loaders, and mechanics employed by motor carriers whose hours and qualifications are regulated by the Secretary of Transportation. 29 C.F.R. § 782.2. The exemption applies when the employee's duties directly affect the safety of operation of motor vehicles in interstate commerce.

51. In 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), which narrowed the Motor Carrier Exemption by changing the definition of "motor carrier." Pub. L. No. 109-59, § 4142, 119 Stat. 1144, 1747 (2005). Pursuant to SAFETEA-LU, the term "commercial motor vehicle" replaced the term "motor vehicle" in the definition of "motor carrier," and commercial motor vehicles were defined as those weighing at least 10,001 pounds. 49 U.S.C. § 31132(1)(A). In 2008, Congress passed the SAFETEA-LU Technical Corrections Act (TCA), which restored the pre-SAFETEA-LU definition of "motor carrier" but confirmed that the Motor Carrier Exemption does not apply to employees

who operate vehicles weighing 10,000 pounds or less. Pub. L. No. 110-244, §§ 305-06, 122 Stat. 1572, 1620-21 (2008).

52. The TCA provides that an employee may qualify for overtime pay under the FLSA if the employee is a "covered employee," meaning an employee whose work is defined as "affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce" or "who performs duties on motor vehicles weighing 10,000 pounds or less." Pub. L. 110-244, Title III, § 306, 122 Stat. 1572, 1621 (2008). Therefore, the overtime pay provision of 29 U.S.C. § 207 applies to vehicles with a gross vehicle weight rating of 10,000 pounds or less. An employee of a motor carrier who works with non-commercial motor vehicles defined as vehicles weighing 10,000 pounds or less may be entitled to overtime compensation notwithstanding the Motor Carrier Exemption.

53. Courts have consistently applied the small vehicle exception where employees spend even a portion of their work operating vehicles under 10,000 pounds. In *Oddo v. Bimbo Bakeries U.S.A., Inc.,* 391 F. Supp. 3d 466, the court held that route sales representatives who drove small vehicles for only 1 to 9 percent of their workweeks could pursue FLSA overtime claims as covered employees under the small vehicle exception. The Third Circuit in *McMaster v. Eastern Armored Services, Inc.*, 780 F.3d 167 (3d Cir. 2015), ruled that a driver who spent roughly half her days operating vehicles under 10,000 pounds was a "covered employee" entitled to overtime compensation under the small vehicle exception, even though she also operated heavier vehicles during other portions of her work.

54. By contrast, courts have found the Motor Carrier Exemption applicable where employees did not actually perform duties on or operate vehicles under 10,000 pounds. In *Tucker v. Oscar Mike Inc.,* No. 2:2021cv01706 (N.D. Ala. 2023), the Northern District of Alabama held that a diesel mechanic who used personal or company vehicles under 10,000 pounds merely to travel to large trucks for repairs was not a covered employee because he never performed duties on the smaller vehicles. Similarly, in *Santana v. Lykes Exclusive, L.P.,* No. 1:2012cv22013 (S.D. Fla. 2013), the Southern District of Florida concluded that a driver who operated a 53-foot tractor-trailer and a 26-foot box truck weighing 26,000 pounds was exempt. The court rejected the plaintiff's assertion that the box truck was a "small vehicle" and emphasized that the small vehicle exception only applies when the employee actually drives vehicles weighing under 10,000 pounds. In *Hill v. B. Frank Joy, LLC*, No. 8:2015cv01120 (D. Md. 2016), the District of Maryland ruled that a driver did not qualify for the small vehicle exception because he exclusively drove dump trucks over 10,000 pounds and merely speculated that he might have been assigned a lighter truck without presenting evidence that he actually operated such vehicles.

55. Upon information and belief, during various workweeks throughout Plaintiff's employment with Defendants, Plaintiff operated or was assigned to operate vehicles weighing less than 10,000 pounds in interstate commerce. Plaintiff's work on such vehicles was not trivial or de minimis, but rather constituted a regular and substantial portion of his duties during the workweeks in which he operated such vehicles. During workweeks in which Plaintiff operated vehicles weighing 10,000 pounds or less, Plaintiff qualifies as a "covered employee" entitled to overtime compensation under 29 U.S.C. §

207, and the Motor Carrier Exemption does not apply to bar his overtime claims for those workweeks.

56. Plaintiff regularly worked in excess of 40 hours per week during his employment with Defendants. During workweeks in which Plaintiff operated vehicles under 10,000 pounds, Plaintiff worked substantially more than 40 hours, including time spent driving, conducting vehicle inspections, loading and unloading cargo, performing repairs and maintenance, waiting for assignments, and performing other job-related duties. Defendants failed to compensate Plaintiff at the overtime rate of one and one-half times his regular rate of pay for hours worked in excess of 40 per week during workweeks in which Plaintiff operated vehicles under 10,000 pounds, in violation of 29 U.S.C. § 207(a)(1).

57. Defendants' violations of the FLSA overtime provisions were willful within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for whether their failure to pay overtime violated the FLSA. The systematic nature of Defendants' compensation practices, combined with their awareness that Plaintiff operated vehicles of varying weights and their failure to track hours worked or determine which workweeks qualified for overtime, demonstrates willful disregard for FLSA overtime requirements. As a result of Defendants' violations of 29 U.S.C. § 207, Plaintiff has suffered and continues to suffer damages in the form of unpaid overtime compensation for all hours worked in excess of 40 per week during workweeks in which he operated vehicles weighing 10,000 pounds or less.

58. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover the full amount of unpaid overtime wages owed. Additionally, because Defendants' violations were willful, Plaintiff

is entitled to liquidated damages in an amount equal to the unpaid overtime wages pursuant to 29 U.S.C. § 216(b). Plaintiff is further entitled to recover reasonable attorney's fees and costs incurred in prosecuting this action.

## COUNT III

## VIOLATION OF FLSA RECORDKEEPING REQUIREMENTS (29 U.S.C. § 211(c))

59. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 96 as if fully set forth herein.

60. Section 211(c) of the FLSA mandates that employers subject to any provision of the FLSA make, keep, and preserve records of employees' wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). An employer subject to any provision of the Fair Labor Standards Act is required to make, keep, and preserve records of the number of hours worked by its employees and of other information prescribed in the regulations issued pursuant to 29 U.S.C. § 211(c). *Andrews v. Montgomery Ward & Co.*, 30 F. Supp. 380 (D. Ill. 1939).

61. The implementing regulations require employers to maintain and preserve payroll or other records showing the hours worked each workday and the total hours worked each workweek. 29 C.F.R. § 516.2(a)(7).

62. Under 29 U.S.C. § 211(c), employers have the burden of keeping proper records of wages, hours, and other conditions and practices of employment. *Goldberg v. Anderson-Brown Patrol, Inc.*, 199 F. Supp. 722 (W.D.N.C. 1961). Employers have a duty to keep proper records of wages, hours, and other conditions. *Whittington v. Roberts*, 360 F. Supp. 335 (N.D. Miss. 1973).

63. Time records must be kept, and responsibility is ultimately on the employer for doing so. *Wirtz v. Harrigill*, 328 F.2d 963 (5th Cir. 1964). Employers are charged with knowledge of what the Fair Labor Standards Act and regulations demand with respect to wage and time records. *McComb v. Hardy*, 8 F.R.D. 28 (D. Va. 1948).

64. The recordkeeping requirements of the FLSA are fundamental to the statute's effectiveness, since the failure to keep accurate records can obscure a multitude of minimum wage and overtime violations. *Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037 (S.D.N.Y. 1993). The FLSA's recordkeeping provisions are vital in ensuring employer compliance with the statute.

65. The regulations concerning recordkeeping contemplate that an employer's books shall plainly and objectively show the hours worked even though employees are paid on a piecework basis. *Walling v. Panther Creek Mines, Inc.*, 148 F.2d 604 (7th Cir. 1945).

66. The payment of employees on a per-mile or trip basis, without maintaining accurate daily and weekly records of hours actually worked, does not satisfy the requirements of 29 U.S.C. § 211(c). *Wirtz v. Williams*, 369 F.2d 783 (5th Cir. 1966). Where an employer records average hours which trips are scheduled to consume rather than actual time consumed, such recordkeeping is not sufficient to satisfy the standards of 29 U.S.C. § 211(c). *McComb v. La Casa Del Transporte, Inc.*, 167 F.2d 209 (1st Cir. 1948).

67. Throughout Plaintiff's employment, Defendants failed to maintain accurate records of Plaintiff's hours worked. Defendants' records tracked only miles driven and did not record or reflect the actual hours Plaintiff spent on non-driving work activities including vehicle inspections, loading and unloading cargo, repairs and maintenance, waiting time for assignments, travel time, and forced downtime periods.

68. Defendants' per-mile compensation system, which paid Plaintiff solely based on miles driven without tracking or recording actual hours worked, violated the FLSA recordkeeping requirements set forth in 29 U.S.C. § 211(c) and 29 C.F.R. Part 516.

69. Defendants' failure to maintain required records of Plaintiff's hours worked was willful and undertaken with the purpose of obscuring the true extent of Plaintiff's work hours and concealing Defendants' violations of minimum wage and overtime requirements.

70. By failing to maintain accurate records showing Plaintiff's actual hours worked each workday and total hours worked each workweek, Defendants violated their statutory duty under 29 U.S.C. § 211(c) and the implementing regulations.

71. Defendants' recordkeeping violations were systematic and continued throughout the entirety of Plaintiff's employment, demonstrating a pattern of willful disregard for FLSA requirements.

**COUNT IV**

**RETALIATION IN VIOLATION OF FLSA (29 U.S.C. § 215(a)(3))**

72. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

73. Section 215(a)(3) of the FLSA makes it unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA, or has testified or is about to testify in any such proceeding.

74. Plaintiff engaged in protected activity under the FLSA by complaining to Defendants about unpaid wages, requesting payment of back wages owed to him, demanding payment of his remaining $500 deposit, and asserting his rights to proper compensation

under federal and state wage laws. Plaintiff's conduct in opposing Defendants' wage violations falls squarely within the protections afforded by Section 215(a)(3).

75. Defendants were aware of Plaintiff's protected activity. Plaintiff directly communicated his complaints regarding unpaid wages to Defendants' owners, brothers Rokas and Randy, who possessed full knowledge of Plaintiff's assertions regarding wage violations and his demands for proper compensation.

76. In response to Plaintiff's protected activity, Defendants subjected Plaintiff to adverse employment actions including but not limited to threats against Plaintiff and his family, intimidation, verbal abuse, profanity, and false accusations that Plaintiff was involved in damage to a parked company truck and implying criminal behavior. These actions constitute adverse employment actions within the meaning of Section 215(a)(3) as they were sufficiently severe to dissuade a reasonable worker from asserting wage claims.

77. Defendants' adverse actions were causally connected to Plaintiff's protected activity and were undertaken with retaliatory intent to discourage Plaintiff from pursuing his wage claims and to punish him for asserting his legal rights. As established in *Stading v. DFC Transp. Sys. Int'l*, 126 Lab. Cas. (CCH)   33035, 1 Wage & Hour Cas. 2d (BNA) 1482 (N.D. Ill. Aug. 31, 1993), evidence that adverse employment action closely followed protected activity and that the decisionmaker knew of the employee's protected activity at the time the adverse decision was made is sufficient to establish a prima facie case of retaliatory discharge. Here, the threats, intimidation, verbal abuse, and false accusations occurred immediately after and in direct response to Plaintiff's request for his remaining deposit and back wages. The temporal proximity between Plaintiff's protected complaints

and Defendants' retaliatory conduct, combined with Defendants' knowledge of the protected activity, establishes the requisite causal nexus.

78. Plaintiff has established a prima facie case of retaliation under the FLSA. As set forth in *Conner v. Schnuck Mkts.*, 121 F.3d 1390, 1997 U.S. App. LEXIS 20672 (10th Cir. 1997), and *Spencer v. Hyde County*, 959 F. Supp. 721, 134 Lab. Cas. (CCH)   33550, 3 Wage & Hour Cas. 2d (BNA) 1515 (E.D.N.C. 1997), to establish a prima facie case of retaliation under the FLSA, plaintiff must show that the employer was aware of plaintiff's participation in protected activity, that adverse employment action was taken against plaintiff engaged in protected activity, and that the two elements are related causally. Plaintiff has satisfied each of these elements by demonstrating that he engaged in protected activity by complaining about unpaid wages, that Defendants knew of this protected activity, that Defendants thereafter subjected him to threats and intimidation, and that these adverse actions were causally connected to his protected complaints.

79. Courts apply the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to FLSA retaliation claims. Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action. If the defendant provides a legitimate, non-retaliatory reason for its action, then the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason is not the true reason for the adverse employment action, but is a mere pretext for illegal retaliation. A plaintiff may demonstrate pretext by showing that the proffered reason had no basis in fact, that the proffered reason did not actually motivate the defendant's adverse action, or that the defendant's proffered reason was insufficient to motivate the adverse action.

80. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including emotional distress, anxiety, fear for his safety and the safety of his family, harm to his reputation, humiliation, and other compensable injuries.

81. Pursuant to 29 U.S.C. § 215(a)(3) and § 216(b), Plaintiff is entitled to recover all damages for retaliation including compensatory damages, injunctive relief, and reasonable attorney's fees and costs.

### COUNT V

### UNPAID WAGES UNDER FLORIDA LAW (Fla. Stat. § 448.08)

82. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

83. Florida law provides employees with a right to sue for unpaid wages and authorizes courts to award reasonable attorney's fees to prevailing parties. Fla. Stat. § 448.08. This statute serves as an independent basis for recovery of unpaid wages under state law and provides for fee shifting in favor of successful wage claimants.

84. Defendants failed to pay Plaintiff all wages owed to him under both their contractual agreement and Florida wage law. Specifically, Defendants owe Plaintiff wages due under the parties' agreement for compensation at $0.65 per mile when Defendants paid only $0.60 per mile without Plaintiff's consent, wages for underreported mileage estimated at 300 to 400 miles per week totaling approximately 1,200 miles per month, wages for non-driving work time including vehicle inspection, loading, unloading, repairs, unpaid downtime when Plaintiff was kept at home without pay for weeks while awaiting assignment of another truck, and travel time including the unreimbursed flight from

Florida to Portland, Oregon to retrieve a truck. Additionally, Defendants failed to return Plantiff's $500 deposit, which constitutes unpaid wages owed to Plaintiff.

85. Florida's minimum wage, currently $13.00 per hour until September 29, 2025, and rising to $14.00 per hour on September 30, 2025, pursuant to Fla. Stat. § 448.110 (as amended by constitutional Amendment 2), exceeds the federal minimum wage. Florida law requires that employees receive at least the Florida minimum wage for all hours worked (for those employees eligible under Florida law).

86. When Plaintiff's total weekly compensation is divided by his total hours actually worked, Plaintiff's effective hourly wage fell below Florida's minimum (i.e. below $13.00 or, after September 30, below $14.00) in numerous workweeks throughout his employment. Defendants' compensation scheme, which paid Plaintiff solely on a per-mile basis without accounting for non-driving work time such as loading, unloading, vehicle repairs, inspections, and unpaid downtime, resulted in Plaintiff receiving less than the Florida minimum wage for many hours of work performed

87. Defendants' failure to pay Plaintiff all wages owed, including the difference between Plaintiff's effective hourly rate and Florida's minimum wage for all hours worked, the unpaid rate differential of $0.05 per mile, compensation for underreported mileage, wages for non-driving work time, and return of Plaintiff's deposit, constitutes a violation of Florida wage laws including Fla. Stat. § 448.110.

88. As a result of Defendants' violations of Florida wage laws, Plaintiff has suffered damages in the form of unpaid wages under Florida law. Florida law provides an independent remedy for these wage violations and authorizes recovery of all unpaid compensation due.

89. Pursuant to Fla. Stat. § 448.08, which provides that courts may award costs and reasonable attorney's fees to the prevailing party in actions for unpaid wages, Plaintiff is entitled to recover unpaid wages, reasonable attorney's fees, and costs incurred in pursuing this claim.

## COUNT VI

## BREACH OF CONTRACT

90. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

91. Plaintiff and Defendants entered into a valid employment contract under which Defendants agreed to compensate Plaintiff at a rate of $0.65 per mile driven, to accurately report and compensate all miles driven, to return Plaintiff's $2,000 deposit in accordance with company policy, and to reimburse Plaintiff for business expenses incurred at Defendants' direction. In Florida, a breach of contract plaintiff must prove the existence of a valid contract, a material breach, and damages. The parties' agreement regarding compensation, mileage reporting, deposit return, and expense reimbursement constituted a valid and enforceable employment contract.

92. Plaintiff performed all obligations required of him under the employment contract by driving assigned routes, maintaining vehicles, completing required documentation, and fulfilling all other assigned duties. Plaintiff fully satisfied all conditions precedent to Defendants' performance under the contract.

93. Defendants materially breached the employment contract by paying Plaintiff only $0.60 per mile instead of the agreed $0.65 per mile, systematically underreporting Plaintiff's mileage by 300 to 400 miles per week thereby depriving Plaintiff of compensation for

thousands of miles actually driven, withholding $500 of Plaintiff's deposit without justification or lawful basis, and failing to reimburse Plaintiff for expenses including airfare to Oregon to retrieve a truck at Defendants' direction, mileage for required DMV trips to West Palm Beach for VIN verification that was entirely Defendants' responsibility as the truck owner, and other expenses incurred for Defendants' business purposes. Each of these failures constitutes a material breach of the contract's express and implied terms.

94. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered damages including unpaid wages calculated at $0.05 per mile for all miles driven during the employment relationship, compensation for 300 to 400 underreported miles per week at the contractually agreed rate of $0.65 per mile, the $500 withheld deposit that Defendants retained without legal justification, and unreimbursed business expenses totaling approximately $3,000 or more including but not limited to airfare, DMV travel expenses, and other costs incurred at Defendants' direction. The withheld deposit and failure to reimburse travel costs constitute breaches of the contractual obligation to return deposits and cover business expenses properly attributable to the employer.

95. Plaintiff is entitled to recover all damages resulting from Defendants' breach of contract, together with pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and appropriate.

**COUNT VII**

**RETALIATION UNDER FLORIDA PRIVATE WHISTLEBLOWER ACT (Fla. Stat. § 448.102)**

96. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

97. The Florida Private Whistleblower Act prohibits employers from taking retaliatory personnel action against an employee because the employee: (a) disclosed or threatened to disclose to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation; (b) provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer; or (c) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. Fla. Stat. § 448.102(3).

98. Defendants engaged in ongoing illegal activities and maintained policies and practices that violated federal and state law, including: (a) systematic wage theft in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and Florida minimum wage law, Fla. Stat. § 448.110; (b) failure to pay the agreed contractual wage rate of $0.65 per mile while paying only $0.60 per mile; (c) systematic underreporting of employee mileage by 300 to 400 miles per week, depriving Plaintiff of compensation for work actually performed; (d) failure to maintain accurate employment records as required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2; (e) unlawful withholding of Plaintiff's deposit without lawful justification; and (f) requiring Plaintiff to operate and perform maintenance on a vehicle that Plaintiff reasonably believed was stolen property or otherwise unlawfully obtained, which vehicle was subsequently seized by law enforcement authorities. Each of these activities, policies, and practices constituted violations of law, rules, or regulations within the meaning of Fla. Stat. § 448.102.

99. Plaintiff engaged in protected activity under the Florida Private Whistleblower Act by objecting to and refusing to participate in Defendants' illegal wage practices and policies. Specifically, Plaintiff: (a) expressly objected to Defendants' systematic underreporting of his mileage and underpayment of his wages as violations of federal and state wage laws; (b) refused to accept or acquiesce in Defendants' illegal compensation scheme that violated the FLSA and state wage laws; (c) refused to continue working under Defendants' unlawful wage practices without demanding compliance with applicable wage and hour laws; (d) objected to Defendants' failure to maintain accurate employment records as required by federal law; (e) demanded that Defendants cease their illegal wage practices and comply with federal and state wage laws; and (f) threatened to report Defendants' wage violations and potential involvement with stolen property to appropriate governmental authorities if Defendants failed to remedy these violations.

100. In direct response to and because of Plaintiff's protected whistleblower activity, Defendants took adverse personnel actions against Plaintiff, including: (a) subjecting Plaintiff to threats of physical harm against Plaintiff and his family members; (b) engaging in severe intimidation and harassment designed to dissuade Plaintiff from asserting his legal rights and reporting Defendants' illegal conduct to governmental authorities; (c) subjecting Plaintiff to verbal abuse, profanity, and aggressive confrontation; (d) making false accusations that Plaintiff damaged company property, thereby attempting to harm his professional reputation and create a pretextual justification for retaliation; and (e) creating a hostile and threatening work environment intended to punish Plaintiff for his protected objections and deter him from pursuing his legal claims or reporting Defendants' violations to governmental agencies. These

retaliatory actions were taken in direct and proximate response to Plaintiff's protected whistleblower activity and were designed to punish Plaintiff for objecting to illegal conduct and to deter him from reporting such conduct to appropriate authorities.

101.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered compensable damages including: (a) severe emotional distress, anxiety, and mental anguish; (b) fear for his physical safety and the safety of his family members; (c) harm to his professional reputation in the trucking and transportation industry; (d) lost wages and earning capacity; and (e) other economic and non-economic injuries directly caused by Defendants' retaliatory conduct.

102.    Pursuant to Fla. Stat. § 448.102(4), Plaintiff is entitled to recover all relief available under the statute, including: (a) reinstatement to his former position or an equivalent position if termination occurred; (b) compensation for lost wages, benefits, and other remuneration; (c) compensatory damages for emotional distress, mental anguish, and harm to reputation; (d) reasonable attorney's fees and costs of litigation; and (e) such other relief as the Court deems appropriate.

103.    Plaintiff acknowledges that Fla. Stat. § 448.102(4) requires that an employee provide written notice to the employer of the violation and allow the employer a reasonable opportunity to correct the violation before filing suit. Plaintiff has complied or will comply with all notice and procedural requirements of Fla. Stat. § 448.102 prior to seeking judicial relief under this Count.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A.  Unpaid minimum wages in an amount to be proven at trial for all violations of 29 U.S.C. § 206;

B.  Unpaid overtime compensation in an amount to be proven at trial for all violations of 29 U.S.C. § 207;

C.  Liquidated damages in an amount equal to all unpaid minimum wages and overtime compensation pursuant to 29 U.S.C. § 216(b);

D.  A declaratory judgment that Defendants violated the FLSA;

E.  Damages for FLSA retaliation, including wages lost, liquidated damages, and equitable relief pursuant to 29 U.S.C. § 216(b);

F.  Unpaid wages under Florida law in an amount to be proven at trial;

G.  Damages for breach of contract in an amount to be proven at trial, including unpaid wages at the contract rate of $0.65 per mile, compensation for underreported mileage, the $500 withheld deposit, and unreimbursed business expenses;

H.  Compensatory damages for retaliation under the Florida Private Whistleblower Act in an amount to be proven at trial;

I.  Compensatory damages for defamation in an amount to be proven at trial;

J.  Punitive damages for Defendants' willful, malicious, and oppressive conduct;

K.  Pre-judgment and post-judgment interest at the maximum rate permitted by law;

L.  Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b), Fla. Stat. § 448.08, and Fla. Stat. § 448.102;

M.  Injunctive relief prohibiting Defendants from retaliating against Plaintiff in violation of 29 U.S.C. § 215(a)(3) and Fla. Stat. § 448.102;

N.  Such other and further relief as the Court deems just and proper.

Dated this 13th day of November, 2025.

Respectfully submitted,

By:     */s/ Jerome Ramsaran*

**JEROME RAMSARAN, ESQ.**
**Fla. Bar No. 112703**
RAMSARAN LAW GROUP
1200 Brickell Ave., Suite 1950
Miami, FL 33131
Tel: (888) 423-9393
Fax: (866) 473-2260
Attorney for Plaintiff
*Designated e-mail Addresses:*
Jerome@ramsaranlawgroup.com;
info@ramsaranlawgroup.com